# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

JACKSON, APRIL TERM, 1921.

---

## JACK BORN *v.* BEASLEY, Inc.

### (*Jackson.* April Term, 1921.)

1. **CORPORATIONS.** Amendment of charter over protest of minority stockholder, to provide for issuance of preferred stock, held not authorized.

Where the charter of a corporation, though issued after 1905, contained no provision as to the issuance of preferred stock as provided by Acts 1905, chapter 174, such act conferred on the corporation no authority to amend its charter so as to allow the issuance of preferred stock over the protest of a minority stockholder, (*Post, pp.* 72, 73.)

Acts cited and construed: Acts 1905, ch. 174.

Cases cited and approved: Master, etc., v. Green, 1 Ld. Raym., 113; Rex v. Cutbush, 4 Burr., 2204; R. W. Co. v. Allerton, 18 Wall., 233; Gray v. Portland Bank, 3 Mass., 363.

Cases cited and distinguished: Railroad v. Knoxville, 98 Tenn., 21; Kent v. Quicksilver Mining Co., 78 N. Y., 159.

2. **CORPORATIONS.** Independent of Acts 1905, chapter 174, laws confer no authority to amend charter to provide for issuance of preferred stock.

Independently of Acts 1905, chapter 174, relating to the power of corporations to amend their charters so as to allow the issuance of preferred stock, the laws of Tennessee confer no authority on corporations to do so over the protest of a minority stockholder. (*Post, pp.* 72, 73.)

(64)

Born v. Beasley.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— HON. ISRAEL H. PERES, Chancellor.

J. S. ALLEN, for appellant.

FITZHUGH, MURRAH & FITZHUGH, for appellee.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

Complainant, being a minority stockholder in the defendant corporation, filed the original bill herein for the purpose of enjoining it from issuing two hundred and fifty shares of preferred stock.

The relief prayed for in the bill was decreed by the chancellor, and upon an appeal to the court of civil appeals his decree was affirmed.

The defendant was incorporated in 1910. Its capital stock was fixed in the charter at two hundred and fifty shares, of the par value of $100 each. The original charter contains no provision authorizing the issuance of preferred stock.

In September, 1920, an amendment to the charter was had, so as to authorize the issuance of two hundred and fifty additional shares of common stock and two hundred and fifty shares of preferred stock, of the par value of $100 each. This action was had without the consent of the complainant.

At a meeting of the stockholders on October 11, 1920, for the purpose of approving the amendment to the charter authorizing the issuance of said additional stock, the complainant duly objected, and when, over his pro-

test, said stock was about to be issued, he filed the bill herein.

In 14 Corpus Juris, 496, it is said:

"The capital stock of a corporation cannot legally be increased except to the extent, under the conditions, and in the manner prescribed by the charter or statute."

Prior to 1905 there was no statutory authority in Tennessee for issuing preferred stock.

In *Railroad* v. *Knoxville*, 98 Tenn., 21, 37 S. W., 888, this court said:

"Notwithstanding the fact that preferred stock is generally more valuable than common stock, there are three reasons why the city of Knoxville will not be required to accept the preferred stock tendered to it in this cause. In the first place, the subscription contract calls for common stock, and, that being so, only common stock will meet the railroad company's obligation. The city may rightfully refuse to receive anything except that which was contracted for. In the next place, the preferred stock has no validity as between the railroad company and the city. The first capitalization, that to which Knoxville subscribed, being of common stock only, and there being no express authority in the charter for the issuance of preferred stock at a subsequent time, the railroad company had no power to create other stock and give it preference as against any holder of common shares without his or its consent. 1 Mor. Pri. Corp. (2 Ed.), section 463; 2 Thompson's Com. on Corp., section 2244."

In *Kent* v. *Quicksilver Mining Co:*, 78 N. Y., 159, the court said:

"We will not say, for we are not called upon here to say, that never can a corporation rightfully, against the dissent of a portion of its stockholders, make some of the stock preferred; what we assert is that this case does not present a state of facts in which a power so to do exists.

"There is a power in this charter to alter, amend, add to, or repeal, at pleasure, by-laws before made.   It is argued from this that it was in the power of the corporate body, in due form and manner, to alter the by-laws which had fixed the amount of the capital stock and the number and relative value of the shares thereof.   The power to make by-laws is to make such as are not inconsistent with the Constitution and the law; and the power to alter has the same limit, so that no alteration could be made which would infringe a right already given and secured by the contract of the corporation.   Nor was the power to alter, to the extent of affecting the contracted relative value of a share, reserved when the share was sold to the stockholder, so as to enter into and form a part of the contract.   An alteration is a *pro tanto* repeal; but no private corporation can repeal a by-law so as to impair rights which have been given and become vested by virtue of the by-law afterward repealed.   All by-laws must be reasonable and consistent with the general principles of the laws of the land, which are to be determined by the courts, when a case is properly before them.   *Master, etc.,* v. *Green,* 1 Ld. Raym., 113.   A by-law may regulate or modify the constitution of a corporation, but cannot alter it.   *Rex* v. *Cutbush,* 4 Burr., 2204; *R. W. Co.* v. *Allerton,* 18 Wall., 233.   The alteration of a by-

law is but the making of another upon the same matter. If the first must be reasonable and in accord with principles of law, so must that which alters it. If, then, the power is reserved to alter, amend, or repeal, and that reservation enters into a contract, the power reserved is to pass reasonable by-laws agreeable to law. But a by-law that will disturb a vested right is not such. See *Gray* v. *Portland Bank,* 3 Mass., 363 [3 Am. Dec., 156]; Grant, Corp., 91. And it differs not when the power to make and alter by-laws is expressly given to a majority of the stockholders, and that the obnoxious ordinance is passed in due form.''

Fletcher on Corporations, sections 3622 and 3623, says:

''Preferred stock, however, cannot be issued, against the dissent of a holder of common stock, if his contract with the corporation will be thereby broken or impaired. Therefore, if a corporation, when it issues common stock, is not expressly authorized to issue preferred stock either by its charter or by the general law, and if there is no provision for such stock in its articles of association, it cannot afterwards issue the same without the unanimous consent of the holders of the common stock. . . .

''Where the consent of all the stockholders is not obtained, the issuance of the stock cannot be validated by a ratification by a majority of the stockholders. . . .

''An expressly granted or implied power to borrow money for the purposes of the corporation does not include the power to issue ordinary irredeemable preferred stock for the purpose of raising money, for, as was said by the New York court of appeals, 'the idea of a borrow-

ing is not filled out unless there is in the agreement there-
for a promise or understanding that what is borrowed
will be repaid or returned, the thing itself or something
like it of equal value, with or without compensation for
the use of it in the meantime,' and the issue of preferred
stock cannot be looked upon 'as other than a preference
of one class of stockholders to another; as giving to the
first class perpetual inextinguishable prior right to a por-
tion of the earnings of the company before the other class
might have anything therefrom.' ''

Since there is no provision in the charter authorizing
the corporation to issue preferred stock, and since there
was no statutory authority authorizing such action prior
to 1905, it therefore becomes necessary to refer to chapter
174 of the Acts of 1905 for the purpose of ascertaining
whether the defendant, under the provisions of said act,
was empowered by a two-thirds vote of its common stock
to have its charter amended so as to authorize it to issue
preferred stock.   Said act is as follows:

"An act to provide for the division by private corpo-
rations hereafter created or organized under existing
statutes of this State of their capital stock into common
and preferred stock, and to define the terms upon which
such division may be made, and the qualities of each class
of stock when so divided.

"Section 1.   Be it enacted by the General Assembly of
the State of Tennessee, that all private corporations
hereafter created or organized under existing statutes
of this State shall have the right to divide their capital
stock into common and preferred stock; provided, how-
ever, it shall be stated in the charter of incorporation how
much of the capital stock is to be common stock and how

much preferred stock; and provided, further, that in no case shall the preferred stock of any such corporation exceed two-thirds of the total capital stock authorized by the charter; provided further, that nothing but cash at not less than par valuation be received in payment for preferred stock.

"Sec. 2. Be it further enacted, that every such corporation dividing its capital stock into the two classes of common and preferred stock, as provided in section 1 of this act, shall state in its charter of incorporation whether the preferred stock is subject to be redeemed at not less than par; and, if so, the time and price of such redemption shall be fixed also in the charter, in which event said preferred stock, or any part thereof, may be redeemed by the corporation.

"Sec. 3. Be it further enacted, that the holders of such preferred stock shall be entitled to receive, and such corporation shall be bound to pay thereon, a fixed yearly dividend, to be expressed in the charter, not exceeding ten per centum, payable semiannually, or annually, before any dividend shall be set apart or paid on the common stock, and such dividend may be made cumulative; and in no event shall a holder of preferred stock be personally liable for the debts of the corporation, unless such preferred stock shall have participated in voting in the corporation under the provisions of section —— of this act, in which event the holder thereof shall be liable as a holder of common stock. In case of insolvency the debts or other liabilities of such corporation shall be paid in preference to the preferred stock. Such preferred stock, however, shall take precedence over the common stock in the distribution of the assets of the corporation in case of dissolution.

"Sec. 4. Be it further enacted, that no such preferred stock as herein provided for shall be issued by any corporation except by authority given to the board of directors of the corporation by a vote of at least two-thirds of the common stock, at a meeting of the owners of such common stock called for that purpose; nor shall any such preferred stock have any voting power in the corporation except such as is given it by a similar two-thirds vote of the common stock.

"Sec. 5. Be it further enacted, that the owners of the preferred stock, under this act, except as hereinbefore provided, shall be subject to same privileges, obligations, and liabilities as are holders of common stock.

"Sec. 6. Be it further enacted, that all certificates of stock of corporations authorized by their charters, as herein provided, to divide their capital stock into the two classes hereinbefore specified, shall have plainly written or printed on their face the words 'common stock' or 'preferred stock,' according as such certificates may be for the one class or the other; and all certificates not so distinguished shall be conclusively deemed to be for common stock.

"Sec. 7. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it.

"Passed March 28, 1905.

"E. RICE,
"Speaker of the Senate.
" J. J. BEAN,
"Speaker Pro Tem of the House of Representatives.
"Approved April 5, 1905.

"JOHN I. COX, Governor."

This act is so clear and explicit that it speaks for it-
self, and any extended comment or analysis is wholly
unnecessary. The language of the act is susceptible of
one meaning, viz., that incorporations coming into
existence subsequent to its passage, by inserting in their
charters a statement as to what portion of their capital
stock shall be preferred, may have the right to issue
such stock, provided same is authorized by a vote of
two-thirds of its common stock.

The provisions of the act requiring the charter to
contain the amount of each kind of stock, whether pre-
ferred stock is subject to redemption, the time and price
of such redemption, the provisions as to dividends, in-
solvency, etc., suggest that the act is prospective in its
view, and does not authorize a charter previously issued
to be amended over the objection of any stockholder so
as to empower the corporation to issue preferred stock,
and likewise does not empower a corporation subse-
quently created to so amend its charter. In fact, we
find no provision in this act authorizing such an amend-
ment in either case.

In some jurisdictions such authority is deemed wise
for the purpose of enabilng the corporation to properly
finance its affairs, while in other jurisdictions such au-
thority, unless contained in the original charter of in-
corporation, or expressly authorized by statute, is looked
upon as impairing the contractual rights of the objecting
stockholders. This is a question for legislative de-
termination, and it is not for the courts to say whether
such provisions are wise or unwise. We simply hold
that the charter of the defendant, though issued subse-

quent to 1905, contained no provision as to the issuance of preferred stock as provided by said act; that said act conferred upon the defendant no authority to amend its charter so as to issue preferred stock over the protest of a minority stock holder; and that, independent of said act, the laws of Tennessee conferred no such authority upon corporations.

We deem it unnecessary to pass upon the question as to whether it requires unanimous consent to authorize a corporation to issue additional common stock. That question is not before us.

It results that the decree of the court of civil Appeals perpetually enjoining the defendant from issuing said preferred stock will be affirmed.